UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

NICHOLAS BRADWELL,
a/k/a/ NICHOLOUS BRADWELL,

      Petitioner,

v.                                Case No.  4:16cv394-MW-CJK

JULIE JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 5).  Respondent filed an answer, providing relevant portions of the state court record.  (Doc. 15).  Petitioner replied.  (Doc. 24).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On January 12, 2013, Florida Highway Patrol Trooper Mark Baker was driving on Lake Bradford Road in Tallahassee, Florida, when he approached petitioner's vehicle from behind.[1] Baker noticed that petitioner, the driver, was not wearing a safety belt. Baker activated his emergency lights. Petitioner first appeared to be pulling over, but instead abruptly turned left, crossing the lane of oncoming traffic and causing an oncoming vehicle, which had the right of way, to brake suddenly. After turning, petitioner accelerated very quickly down the road. Baker activated his siren and pursued petitioner's vehicle with siren and lights engaged. The chase reached speeds of 70 miles per hour in a residential area zoned for 35 miles per hour. At one point, petitioner slowed to 45 miles per hour and made a hard-right turn onto another street, then came to an intersection with a stop sign. Petitioner then made a sharp left turn at the intersection, running the stop sign at 35 miles per hour and then accelerating to 60 miles per hour. Baker pursued petitioner at 60 miles per hour until they reached the end of that street where it intersected with Mike Street. Petitioner drove through that intersection, pulled behind a house on

---

[1] Description here of the vehicle as "petitioner's vehicle" means only that petitioner was driving it and was its sole occupant. Petitioner did not own the vehicle.

Mike Street, jumped out of the vehicle while it was still moving, and started running through neighboring yards.  Petitioner's vehicle crashed into a tree in the backyard of 1511 Mike Street.  Baker pursued petitioner on foot through backyards, yelling, "Stop, this is the Police", but petitioner kept running.  Petitioner encountered a fence and, as he jumped it, almost fell.  Baker observed a dark object fall away from petitioner's person.  After scaling the fence petitioner took off running, but eventually threw his hands up, laid down on the ground on his back, and extended his arms to his sides.  Baker ordered petitioner to not move, applied handcuffs, and placed him under arrest.  Petitioner gave Baker his social security number for identification, which Baker ran through dispatch.  Baker learned petitioner's name and that he had a suspended Florida Driver's License and was a convicted felon. Baker placed petitioner in his patrol vehicle and waited for back up.

After back up arrived, Baker searched the vehicle and found two sandwich-sized Ziploc-style bags, full of cocaine, lying on the center console in front of the shifter.  Baker then re-traced his steps along the path of the foot chase, and found one of petitioner's shoes in a backyard.  Coming to the fence scaled by petitioner, Baker found a .40 caliber Glock pistol lying on the ground in the sand precisely in petitioner's path along with a purple Crown Royal bag containing a sandwich-sized

Ziploc-style bag of cocaine and the same type bag of marijuana. The drugs were field tested and confirmed to be cocaine and marijuana. Searching petitioner's person, Baker found $1,000.00 in cash. Petitioner was Mirandized and transported to the jail. (Doc. 15, Ex. C (trial transcript)).[2]

Petitioner was charged in Leon County Circuit Court Case No. 2013-CF-140, with seven crimes: felony fleeing or attempting to elude a law enforcement officer in an agency vehicle with siren and lights activated at high speed or with wanton disregard for the safety of persons or property (Count 1); possession of a controlled substance – cocaine (Count 2); carrying a concealed firearm (Count 3); possession of a firearm by a convicted felon (Count 4); possession of cannabis (Count 5); resisting an officer without violence (Count 6); and driving while license suspended or revoked (Count 7). (Ex. A, p. 25). Petitioner retained counsel, John Edward Eagen. (*Id.*, p. 45).

Before trial, the defense stipulated that the narcotics found in the car and in the Crown Royal bag were cocaine and marijuana, and that at the time of the incident petitioner's driver's license and license privileges were suspended and petitioner

---

[2] References to exhibits are to those provided at Doc. 15. Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right-hand corner of the page.

knew they were suspended.  (*Id*., pp. 49, 50).  The firearm charges – Counts 3 and 4 – were severed.  (*See* Ex. B, pp. 3-4).  After a jury trial in which Trooper Baker was the only witness, a jury found petitioner guilty of the remaining five crimes as charged.  (Ex. A, pp. 62-64).  Petitioner was adjudicated guilty of Counts 1, 2, 5, 6 and 7, and sentenced to a total term of 8 years in prison.[3]  (Ex. A, pp. 68-78 (judgment and sentence), pp. 91-104 (sentencing transcript)).  On June 10, 2015, the Florida First District Court of Appeal (First DCA) affirmed the judgment per curiam without opinion.  *Bradwell v. State*, 166 So.3d 768 (Fla. 1st DCA 2015) (Table) (copy at Ex. G).

On October 14, 2015, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. H, pp. 1-32).  The state circuit court denied relief without an evidentiary hearing (*id*., pp. 33-106), and the First DCA affirmed per curiam without opinion.  *Bradwell v. State*, 191 So. 3d 463 (Fla. 1st DCA 2016) (Table) (copy at Ex. K).  The mandate issued June 13, 2016.  (Ex. K).

---

[3] Petitioner's individual sentences are as follows:  8 years in prison on Count 1; 5 years in prison on Count 2 to run concurrent with Count 1; 11 months and 29 days in the county jail on Counts 5, 6 and 7, concurrent with Count 1.  (Ex. A, pp. 70-76).  Petitioner was given 28 days of jail credit.  (*Id*., p. 75).

Petitioner filed his original federal habeas petition on June 24, 2016. (Doc. 1). Petitioner's amended petition raises four grounds for relief. (Doc. 5). Respondent asserts that to the extent any of petitioner's claims challenge the validity of the convictions on Counts 5, 6 and 7, the court is without jurisdiction to entertain them because those sentences completely expired prior to the date petitioner filed his original petition. Respondent asserts that to the extent petitioner's claims challenge the validity of his convictions on Counts 1 and 2, federal habeas relief must be denied. (Doc. 15).

### JURISDICTION TO REVIEW CONVICTIONS ON COUNTS 5, 6 AND 7

A federal district court may entertain a habeas corpus petition only from a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also* 28 U.S.C. § 2254(a). The "in custody" requirement is jurisdictional. *See Stacey v. Warden, Apalachee Corr. Inst.*, 854 F.2d 401, 403 (11th Cir. 1988). To satisfy the "in custody" requirement, "the habeas petitioner [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); *see also id.*, 490 U.S. at 491 ("We have never held . . . that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has fully

expired at the time his petition is filed."); *id*. at 492 ("While we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction.").

Petitioner was sentenced on Counts 5, 6 and 7 to concurrent terms of 11 months and 29 days in the county jail with credit for 28 days. The sentences were imposed on July 15, 2013, and ran concurrent with the sentence imposed on Count 1. (Ex. A, p. 68). Petitioner filed his original petition in this case on June 24, 2016, which is two years after his sentences on Counts 5, 6 and 7 expired. Petitioner's reply does not address, much less dispute this fact. Although courts have traditionally interpreted the "in custody" requirement liberally to include situations where the sentence in question enhances or delays the commencement of another sentence, that circumstance does not exist here, because all of petitioner's sentences are concurrent. The sentences on Counts 5, 6 and 7 had no effect on the commencement of petitioner's other sentences. Petitioner does not allege, and nothing in the record suggests, that he is under any "present restraint" attributable to his convictions and sentences on Counts 5, 6 and 7. This court is thus without jurisdiction to consider any challenge to petitioner's convictions for possession of

cannabis (Count 5), resisting a law enforcement officer without violence (Count 6), or driving while license suspended (Count 7). *See Maleng, supra*; *see also e.g., Diaz v. State of Fla. Fourth Judicial Circuit ex rel. Duval Cnty.*, 683 F.3d 1261, 1264-65 (11th Cir. 2012) (holding that habeas petitioner in federal custody was not "in custody" under the state judgment he sought to collaterally attack, where he filed his habeas petition eight months after his state sentence had fully expired, he was not under any present restraint attributable to that state conviction, and any grant of relief would not serve to accelerate his release from his present federal confinement).

HABEAS REVIEW OF CONVICTIONS ON COUNTS 1 AND 2
(FELONY FLEEING OR ATTEMPTING TO ELUDE A LAW ENFORCEMENT
OFFICER; POSSESSION OF COCAINE)

Section 2254 Standard of Review

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are

presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other

defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)).  The § 2254(d) standard "is difficult to meet . . . because it was meant to be."  *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Petitioner's Claims

Ground One        "The Introduction of Inadmissible Collateral Crime/Other Bad Act Evidence Was Fundamental Error; the Evidence Was Harmful, Not Relevant and Deprived Petitioner of His Right to a Fair Trial.  Thus, Violating His Sixth and Fourteenth Amendment Rights of the United States Constitution."  (Doc. 5, p. 5).

This claim involves Trooper Baker's testimony describing the cocaine he found at the scene, and the cash he found on petitioner's person.  Petitioner argues that although he was charged with only *possessing* cocaine – not with selling it or possessing it with the intent to sell – Trooper Baker testified "to the effect that Petitioner possessed a large amount of cocaine and a large amount of cash, and that the amount of cocaine and the packaging indicated that it was not for personal use." (Doc. 5, p. 6).  Petitioner contends that "the trial court abused its discretion and fundamentally erred when it allowed the State to introduce crime/other bad act evidence that was harmful, not relevant to the case, prejudicing Petitioner where the

jury heard this irrelevant evidence and found Petitioner guilty and deprived him of a fair trial." (*Id*., pp. 5-6).

Respondent asserts a procedural default defense, arguing that petitioner's characterization of his claim as a violation of his Sixth and Fourteenth Amendment rights is new. When petitioner challenged the testimony at issue on direct appeal, his counseled initial brief did not, according to respondent, fairly present the matter as a violation of his federal constitutional rights; rather, he presented it as a state law issue. (Doc. 15, pp. 15-23). Respondent asserts that even if this court finds in petitioner's favor on the exhaustion issue (i.e., that he fairly presented the state court with the federal constitutional nature of his claim and that the state court denied relief on the merits as opposed to imposing a procedural bar), petitioner's claim still fails because he has not shown that the state court's rejection of the claim was contrary to, or an unreasonable application of, clearly established Federal law. (*Id*., pp. 23-26). Respondent is correct on both points.

A.    Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *See Boerckel*, 526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "For cause to exist, an external impediment, whether it be governmental interference or

the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (*citing Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). The *Schlup* standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Petitioner's appellate counsel summarized the issue before the First DCA this way: "The improper admission of collateral crime/other bad act evidence suggesting that appellant, Nicholas Bradwell, had committed other uncharged crimes, was fundamental error.  Such evidence is presumptively harmful, and it was actually harmful here, and fundamental error." (Doc. 15, Ex. D, p. 9).  Petitioner argued in substance that admission of the challenged testimony rose to the level of fundamental error as gauged by Florida decisional law in analogous contexts.  (Ex. D, pp. 12-18 (discussing *Czubak v. State*, 570 So. 2d 925 (Fla. 1990); *Keen v. State*, 775 So. 2d 263 (Fla. 2000); *Ward v. State*, 559 So. 2d 450 (Fla. 1st DCA 1990); *Everett v. State*, 124 So. 3d 938 (Fla. 1st DCA 2013); and *Bozeman v. State*, 698 So. 2d 629 (Fla. 4th DCA 1997))).  Petitioner confined his argument to state law and state standards, namely: Florida's fundamental error standard; Florida case law discussing Florida's standards for gauging the harmfulness of an error; Florida's guidelines for admitting collateral crime/bad act evidence; and Florida case law determining whether, in particular circumstances, the admission of improper collateral crime evidence constituted fundamental error.  (*Id*.).  The state cases petitioner cited did not address federal law.  Petitioner concluded:

> [T]he jury had reason to be skeptical of the state's evidence, the uncorroborated testimony of a single witness; the admission of

> improper evidence of uncharged crimes could have caused the jury to resolve any qualms it had about the quality and reliability of the state's case against Bradwell; the state also sandbagged defense counsel by eliciting the testimony of uncharged bad acts for the first time on redirect examination. Admitting the evidence was fundamental error.

(*Id*., pp. 17-18).

Petitioner's only reference to any constitutional right came in his labeling of the issue on appeal, where he said: The introduction of inadmissible collateral crime/other bad act evidence was fundamental error; the evidence was harmful, not relevant and deprived Appellant of his constitutional right to a fair trial." (Ex. D, p. i). This single, general reference to a constitutional right is not enough to fairly present a federal constitutional claim under the Due Process Clause. The general reference to "constitutional right to a fair trial," unaccompanied by any identification or discussion of a federal constitutional standard, any reference to federal law, or any citation to a federal case does not meet the Eleventh Circuit standard of fair presentation. (Ex. D, pp. 10-18).

The Eleventh Circuit requires more than "needles in the haystack" to satisfy the exhaustion requirement. *See McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) ("We therefore hold that the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state

court record." (internal quotation marks and citations omitted)); *see also Landers v.*
*Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1296-97 (11th Cir. 2015) (holding
that petitioner procedurally defaulted his claim that the state court's inadequate fact-
finding procedures violated his Fourteenth Amendment due process rights;
petitioner's claim in state court that he was denied a "fair" proceeding was not
sufficient to apprise the state court of a federal claim about due process because the
only support he presented for the argument was based on state law).

Petitioner's present claim that the admission of collateral crime evidence
violated his rights under the Sixth and Fourteenth Amendments is unexhausted and
procedurally defaulted.  Petitioner makes none of the requisite showings to excuse
the procedural default.  Petitioner's reliance on *Martinez v. Ryan*, 566 U.S. 1 (2012)
in his reply is misplaced, as that equitable rule does not apply in this context.  *See*
*Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1249 (11th Cir. 2014) ("[T]he
equitable rule in *Martinez* 'applies only to the issue of cause to excuse the procedural
default of an ineffective assistance of trial counsel claim that occurred in a state
collateral proceeding'[.]" (*quoting Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d
940, 943 (11th Cir. 2014))). Petitioner's procedural default bars federal habeas

review of Ground One.[5]  The undersigned notes that the requirement to fairly raise

the federal claim does not merely serve to preserve the claim for federal habeas; it

allows the state courts an opportunity to rule correctly on the federal issue.

---

[5] While not controlling, the court notes that the circumstances of this case are very similar to those addressed in an unpublished opinion, *Ramos. v. Sec'y, Fla. Dep't of Corr.*, 441 F. App'x 689, 696-97 (11th Cir. 2011).  There, the Eleventh Circuit held that the petitioner failed to exhaust his federal due process claim arising from the unobjected-to admission of a medical examiner's testimony which petitioner contended was scientifically unreliable, and from the unobjected-to admission of a computer-generated animation of the position of the victim's body.  The Eleventh Circuit determined that neither issue was presented to the state court as a federal constitutional claim, resulting in procedural default:

> Ramos claims denial of due process in the admission of the testimony of the medical examiner into evidence.  In his brief to the District Court of Appeal of Florida, Ramos made one passing reference to federal law.  He stated that "this evidence was so devastatingly prejudicial that its introduction violated his Florida and federal constitutional rights to due process and a fair trial and the error was fundamental and, thus, must be considered by this court even absent objection."  Nowhere in his argument does he argue federal standards, nor does he include references to federal case law.  While other Circuits have interpreted *Baldwin* differently, as Ramos discusses in his brief, we have required more than "needles in the haystack." *McNair*, 416 F.3d at 1303.  *But see Jackson v. Edwards*, 404 F.3d 612, 618–22 (2d Cir.2005) (focusing on the degree of similarity of the state law claims and federal law claims in deciding exhaustion for the purpose of habeas).  In *McNair*, we found that a citation to a single federal case in a string of cases, and a passing reference in the conclusion of an argument to various amendments of the Constitution did not fairly present the federal issue to the state court, barring federal habeas review for lack of exhaustion in the state courts.  416 F.3d at 1303-04.

> Similarly, here Ramos mentions his federal constitutional rights only in an opening paragraph.  This reference did not fairly present the issue to the state court, and so it has not been exhausted.  Our holding in *McNair* does not depend on whether the state and federal standards for each issue were identical, but rather whether the state court was on notice of the federal claim. *Id.* at 1304.  Here, the state court was not on notice of the due process claim in his objection to the admission of evidence, so the issue was not properly exhausted in the state court.

B.    Section 2254 Review of State Court's Decision

Even assuming to petitioner's benefit (without deciding) that he properly exhausted his federal constitutional challenge to the testimony at issue by presenting it in his direct appeal, he is not entitled to habeas relief.  The First DCA's summary rejection of petitioner's claim warrants deference under 28 U.S.C. § 2254(d).  *See Harrington v. Richter*, 562 U.S. 86, 100 (2011) ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").  Because the First DCA's opinion offers no reasoned explanation and there is no lower court opinion to "look through" to, this court employs the test announced in *Richter, supra*. The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief."  *Richter,* 562 U.S. at 98.  "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent

---

*Id*. at 696-97 (referencing *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)).

with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

One theory that could have supported the First DCA's decision is that petitioner opened the door to the testimony he now challenges. Petitioner's defense strategy was to concede that the substance Baker found in the car and in the Crown Royal bag was cocaine, but to argue that the State's evidence failed to sufficiently connect petitioner to the cocaine. (Ex. C, pp. 20-21 (opening argument), pp. 40-57 (cross-examination of Trooper Baker), pp. 70-71 (motion for judgment of acquittal), pp. 103-04, 106-10 (closing argument)). The defense emphasized that no drugs were found on petitioner's person; that the car petitioner drove was not his; that the bags of cocaine recovered from the car and the Crown Royal bag were not tested for fingerprints; that the Crown Royal bag was not found in petitioner's actual possession; and that no drug paraphernalia or physical evidence of petitioner having used the drugs was found in the car or on his person. To that end, during cross-examination of Trooper Baker defense counsel asked Baker:

> Q [Defense Counsel Eagan]: And inside of the – oh, first let me ask you about the baggies. Would you describe these about the size of a sandwich bag?
>
> A [Trooper Baker]: We had – there were two different types of bags. There were ones that were the sandwich bags, which you could kind of

see from the outside, and then inside of that were a couple of the small bags.  Now –

Q:  Slide – okay –

A:  I'm sorry?

Q:  The smaller bags, are they the type one would – like if you went to get – oh, sometimes you buy jewelry and they're in a little, tiny bag?

A:  Yes.  Yes, sir.  Like you buy maybe earrings or something like that.

Q:  Yes.

A:  They come in little bags.

Q:  Okay.   And other than the – and there's nothing really distinguishable about them is there?   I mean, they are plastic bags; correct?

A:  Yes, sir.

Q:  Nothing unique about them?  No insignias or labels or anything; right?

A:  No.  Just baggies with the substance inside of them.

        . . . .

Q:  Now, the Crown Royal bag was not in the – was not in the custody of Mr. Bradwell when you found it; correct?

A:  When I found it, no.

Q:  Okay.  Was that in – that was not sent off to be tested for fingerprints or DNA, was it?

A:  The Crown Royal bag, no, sir.

Q:  Okay.  Now, the  – then inside of the Crown Royal bag was another sandwich bag with little bags with cocaine?

A:  Yes, sir.

(Ex. C, pp. 47-48).  Defense counsel continued:

Q:  Okay.  So, let me see if I understand the totality of the circumstances here.  The crown – the cocaine and the baggies were found in a car that Mr. Bradwell was driving, but was not owned by him; correct?

A:  Yes, sir.

Q:  The Crown Royal bag was found in close proximity to his shed in – in a backyard in a house that was not his as well?

A:  Yes, sir.

Q:  Correct?  Nothing – and when you searched Mr. Bradwell you found no – no substance on him at all?  No marijuana?  No –

A:  I didn't find any actual physical substance, no.

Q:  Okay.  In the car did you find any type of paraphernalia whatsoever?  Any type of implements?

A [Trooper Baker]:  Other than the baggies, multiple small, little baggies that were also found in the Crown Royal bag itself.

Q:  I guess, my – let me be more specific.  What I'm asking you is normally when one smokes cocaine they use commonly what is a glass stem.  Are you familiar with that?

A:  Yes, sir.

Q:  And you didn't find a glass stem in the car, did you?

A:  I didn't find any glass stem or pipes or anything like that.

Q:  Or any pipes?

A:  No, sir.

Q:  And none on Mr. Bradwell?

A:  No, sir.  It was a strong odor of marijuana in the vehicle.  I know that.

Q:  Well, you didn't find any roaches in the – in the vehicle, did you?

A:  Not that I can recall, no, sir.

Q:  No.  All right.  And is it fair to say that if there is marijuana used in a specific area for over a length of time, it's going to smell like marijuana?

A:  Per se, depending on how the person cleans the car.

(Ex. C, pp. 51-53).  Defense counsel also asked if there were soda cans in the car, and Baker said no.  (*Id*., p. 53).

On redirect examination, Baker testified that the registered owner of the car was not in the car at the time of the offenses, and that petitioner was the only one inside the car or who had control of the car at the relevant time.  (*Id*., p. 58).  Baker found a large amount of cocaine in the car, with a street value of approximately

$4,000. (*Id*., p. 61). The prosecutor asked Baker if it was common for someone to have that amount of cocaine for personal use. (*Id*.). Defense counsel objected based on speculation, and the trial judge sustained the objection, telling the prosecutor he must lay a predicate for the officer's knowledge. (*Id*.). Baker then testified that he had drug interdiction courses through the academy and numerous drug cases on patrol. (*Id*., pp. 61-62). Baker testified that based on his experience, the amount of cocaine that was present in this case was not consistent with someone who had it for personal use. (*Id*., p. 62). The prosecutor asked Baker if he had any reason to think petitioner was smoking in the car. Defense counsel objected to the question, and the trial court sustained the objection before Baker answered. (*Id*., p. 62).

At a bench conference, the trial court announced that the jurors asked two questions. The first question was: "Did the trooper say he had a large amount of cash on him?" The trial court asked counsel if they had any objections to the question. The prosecutor and defense counsel each stated he had no objection to the question. Both attorneys agreed that Baker should be asked if he counted the money in order to know what "large" meant. The jury's second question was: "Was the cocaine in the console in open view or was the console closed?" The prosecutor and defense counsel each stated he had no objection to the question. (*Id*., p. 63).

In response to the first question, Baker testified that he believed petitioner had the money in his right front pocket and that it was over a thousand dollars. (*Id*., p. 64). In response to the second question, Baker stated that he did not actually find the cocaine in the console itself, but in a little area where people keep ashtrays or other things. The cocaine was in plain sight. (*Id*., p. 64).

During closing argument, defense counsel argued that even though petitioner was driving the car, the car was not his, so no one could assume the drugs were his. (*Id*., p. 103). Counsel argued that petitioner did not know there was cocaine in the car, and had he known, he would have taken it with him when he ran from Baker. (*Id*., p. 106). Defense counsel further argued that there was no proof the Crown Royal bag belonged to petitioner – there was nothing unique about a Crown Royal bag; the area of the foot chase was a high drug/high crime area; and the incident occurred at night which would have obscured Baker's vision. (*Id*., pp. 106-07). For his overarching and concluding point, counsel contended that the State's possession theory – positing that petitioner possessed the cocaine in the car and the Crown Royal bag – did not make sense because there was no evidence petitioner used cocaine, and the State did not charge him with possessing it with the intent to sell. (*Id*., pp. 108-09). Defense counsel argued:

> [I]t doesn't make sense, because Mr. Bradwell is not charged with sale. He is charged with possession of a controlled substance, possession of a controlled substance.  So, don't be misled by discussion, you know, o[f] money or baggies or et cetera.  This is a – this is straight, possession or not possession.  Either possessed it or he did not possess it. . . .
>
>             . . . .
>
>         I know the State asked questions about, you know, when the trooper said there was the smell of marijuana in the car.  Well, that doesn't – that doesn't mean, because the smell is there, you possessed it.  If you – and if you were using drugs or whatever or even whatever you want to say in this case, you would have some type of paraphernalia.  And I don't mean the bags, which he is not charged with paraphernalia.  What I'm saying is the – no pipes, no lighters, no stems, nothing.
>
>         And, again, I reiterate that the money found on him is not – is not relevant to your – your deliberations, because we are talking about possession, not sale.   That's how it's charged possession, only possession.

(*Id*., pp. 109-10).

Viewing the totality of the circumstances – including the defense strategy, counsel's arguments, the testimony at trial, petitioner's opening the door to the line of questioning he now challenges, and the lack of defense objection to the testimony – the First DCA reasonably could have found no violation of petitioner's Sixth and Fourteenth Amendment rights.  No decision of the Supreme Court suggests that admitting the testimony in this case was unconstitutional.

Ground Two          "Trial Counsel Rendered Ineffective Assistance when He
                    Failed to Impeach the State's Key Witness after Giving
                    Perjured Testimony During Trial.  Thus, Violating
                    Petitioner's' Sixth and Fourteenth Amendment Rights of
                    the United States Constitution."  (Doc. 5, p. 7).

Petitioner claims trial counsel was ineffective for failing to impeach Trooper

Baker's "perjured" testimony that he issued traffic citations to petitioner for

speeding and aggravated fleeing or eluding.  Petitioner argues that the actual

citations show that Baker did not issue a citation for speeding and that it was

Assistant State Attorney (ASA) Jason Maine who issued the citation for felony

fleeing or eluding.  (Doc. 5, pp. 7-8).  Petitioner also faults counsel for failing to

challenge the traffic citation for felony fleeing or eluding on the ground that Florida

law required the arresting officer (Trooper Baker) to issue the citation, not the

prosecutor.  (*Id*., pp. 8-9).

The parties agree that petitioner presented this claim to the state courts as

Ground One of his Rule 3.850 motion; that the state circuit court denied relief; and

that the First DCA summarily affirmed without explanation.  (Doc. 5, p. 10; Doc.

15, pp. 27-28).  The First DCA's summary rejection of petitioner's claim warrants

deference under 28 U.S.C. § 2254(d).  *Richter*, 562 U.S. at 100.  Under § 2254(d)(1)

the question is whether the state court's decision is "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A.      Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out a two-pronged standard for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (*quoting Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

*Strickland*, 466 U.S. at 690.    The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 571 U.S. at 23 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result.  *See Strickland*, 466 U.S. at 694.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Id.*  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *See Strickland*, 466 U.S. at 698.  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371

(2010).  "Establishing that a state court's application of *Strickland* was unreasonable

under § 2254(d) is all the more difficult."  *Richter*, 562 U.S. at 105.  As the Court in

*Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both
> "highly deferential," and when the two apply in tandem, review is
> "doubly" so.  The *Strickland* standard is a general one, so the range of
> reasonable applications is substantial.  Federal habeas courts must
> guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d).  When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable.  The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.    Section 2254 Review of State Court's Decision

Where, as here, there has been one reasoned state judgment rejecting a federal

claim followed by a later unexplained order upholding that judgment or rejecting the

same claim, federal habeas courts employ a "look through" presumption.  *Wilson v.*

*Sellers*, No. 16-6855, — S. Ct. —, 2018 WL 1800370 (Apr. 17, 2018).  The *Wilson*

Court described this presumption as follows:

> We hold that the federal court should "look through" the unexplained
> decision to the last related state-court decision that does provide a
> relevant rationale.  It should then presume that the unexplained decision
> adopted the same reasoning.  But the State may rebut the presumption
> by showing that the unexplained affirmance relied or most likely did
> rely on different grounds than the lower state court's decision, such as

alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Id*. at *3. Applying *Wilson*'s "look-through" presumption, the First DCA's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*.

The state circuit court identified and applied the *Strickland* standard, (Ex. H, p. 33), and denied relief for these reasons:

> Defendant contends that counsel was ineffective for failing to impeach the State's sole witness, Trooper Baker, regarding issuance of a traffic citation. Defendant selectively excerpts the trial transcript to assert that the Trooper testified that he wrote a citation for fleeing and eluding when in fact it was written by the State Attorney. However, later sections of the transcript show that Trooper Baker testified that he only wrote citations for operating a vehicle with suspended license, running a stop sign, and the seatbelt violation. *Exh. 2 – Trial Transcript pg. 55.* Thus, counsel's performance was neither deficient nor prejudicial. Moreover, there is no basis for Defendant's argument that the traffic citation for fleeing or eluding must be written by the arresting officer. This claim is denied.

(*Id*., p. 34) (italics in original). As the state court reasonably found, the trial transcript conclusively refutes petitioner's claim. Defense counsel asked Trooper Baker:

> Q: Okay. You said during your testimony or as you were going through your testimony, I think you named several violations, traffic violations that – that Mr. Bradwell, you said – well, no seatbelt; right?

A:  Yes, sir.  That was my probable cause for the stop, yes, sir.

Q:  Failure to yield; correct?

A:  To oncoming traffic, yes, sir.

Q:  Yes, sir.  Failure to stop at a traffic sign or a traffic device; right?

A:  Which would be the stop sign, yes, sir.

Q:  The stop sign.  And speeding?

A:  Yes, sir.

Q:  Or reckless driving or something of that nature, perhaps?

A:  Yes, sir.

Q:  Now, did you write citations for any of those charges?

A:  I wrote for – as far as my recollection is, I wrote for speeding, I believe the traffic control device.  The fleeing and eluding is – in the statute is reckless per se, so I just – the speed would be inducement to the fleeing and eluding.

(Ex. C, pp. 54-55).  Defense counsel then asked Baker to look through his book of traffic citations to refresh his memory on the citations he wrote.  After reviewing his citations book, Trooper Baker corrected his prior testimony:

A:  The citations that I have with me today would be operating license suspended, running of the stop sign, the seatbelt, and that should be it.

Q:  Okay.

A:  Then, obviously, the criminal charges they were charged at the time.

(Ex. C, pp. 55-56).  Petitioner's argument ignores counsel's impeachment of Baker with the citation book.   The trial transcript establishes that defense counsel effectively challenged Baker's testimony on the traffic citations.

Regarding whether Baker, rather than ASA Maine, was required by Florida law to issue the traffic citation for felony fleeing or eluding, the state court determined, as a matter of state law, that petitioner's proposed objection was baseless.  When the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law."  *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted).  Because this court will not "second guess" the Florida state courts' conclusion that the traffic citation for fleeing or eluding did not have to be prepared by Trooper Baker, petitioner cannot demonstrate counsel was deficient for failing to raise the issue.  *See id*.  A lawyer cannot be ineffective for failing to raise a meritless claim.  *See Freeman v. Attorney Gen, Fla*., 536 F.3d 1225, 1233 (11th Cir. 2008).

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

<table>
<tr><td>Ground Three</td><td>"Trial Counsel Rendered Ineffective Assistance when Failing to File an Adequate Motion for Judgment of Acquittal when the State Failed to Prove Aggravated Fleeing and Eluding. Violating the Petitioner's Sixth and Fourteenth Amendments of the United State's [sic] Constitution." (Doc. 5, p. 11).</td></tr>
</table>

Petitioner claims trial counsel was ineffective for failing to argue an adequate motion for judgment of acquittal (JOA) on the felony fleeing or attempting to elude charge. The trial transcript shows that trial counsel moved for JOA on that charge and argued that the State failed to elicit testimony from Trooper Baker that his siren was activated. (Ex. C, pp. 69-70). The trial court denied the motion. (*Id*., p. 71). Petitioner claims counsel should have argued certain additional bases for JOA: (1) the arresting officer never charged petitioner with, nor issued him a traffic citation for, aggravated fleeing or eluding, and the traffic citation and charging information filed by the prosecutor were not supported by an affidavit or testimony from the arresting officer; (2) the ASA's traffic citation for felony fleeing or eluding did not mark the box for "unlawful speed" or "careless" or "reckless" driving; and (3) the

only evidence that petitioner was speeding or driving recklessly was Trooper Baker's uncorroborated testimony.  (Doc. 5, pp. 11-13).

Respondent contends that with the exception of petitioner's proposed jurisdictional challenge to his prosecution based on defects in the charging information or citation, petitioner presented this claim to the state courts as Ground Two of his Rule 3.850 motion.  (Doc. 15, pp. 36, 40).  The parties agree that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation.  (Doc. 5, pp. 13-14; Doc. 15, p. 36).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard set forth above.

B.    Section 2254 Review of State Court's Decision

Applying *Wilson*'s "look-through" presumption, the First DCA's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*.  The state circuit court identified and applied the *Strickland* standard, (Ex. H, p. 33), and denied relief for these reasons:

> Defendant contends that counsel was ineffective for failing to make an adequate motion for judgment of acquittal regarding the felony fleeing or eluding.  This claim is without merit.  Counsel's motion for JOA was detailed, specific, and more than sufficient. *Exh. 2-pp. 69-71.*

>    There was evidence that Defendant was driving over 70 miles per hour
>    in a residential neighborhood where the speed limit was 35. *Exh. 2-pg.
>    28.* This claim is denied.

(*Id.*, p. 34) (italics in original).

The state court reasonably determined that counsel's failure to focus on the speeding/reckless driving element of the charge (as petitioner proposes) was not ineffective, because Trooper Baker's testimony was sufficient, if believed by the jury, to prove that petitioner, during the course of fleeing Baker, drove at a high rate of speed or in a manner demonstrating a wanton disregard for the safety of persons or property. *See I.R. v. State*, 385 So. 2d 686, 688 (Fla. 3d DCA 1980) ("The testimony of a single witness, even if uncorroborated . . . is sufficient to sustain a conviction."); *McDuffie v. State*, 970 So.2d 312, 332 (Fla. 2007) ("Where the State has presented competent, substantial evidence of the crimes charged, the trial court does not err in denying a motion for judgment of acquittal and submitting the case to the jury.").

To the extent petitioner faults counsel's JOA argument because counsel failed to challenge the prosecution itself based on petitioner's perceived defects in the charging information or citation, such claim fails even on *de novo* review. "The purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of

the evidence, and where the state has brought forth competent evidence to support its claim that each element of the crime has been performed, a judgment of acquittal will not lie." *Cunningham v. State*, 385 So. 2d 721, 722 (Fla. 3d DCA 1980).  The alleged defects in the traffic citation or information are irrelevant to the question of whether the evidence adduced at petitioner's criminal trial was such that "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).[6]  Petitioner is not entitled to federal habeas relief on any aspect of Ground Three.

> Ground Four    "Trial Counsel Rendered Ineffective Assistance when Failing to Move to Dismiss or Mistrial of the Aggravated Fleeing and Eluding Charge Due to Not Being Able to Confront His Accuser at Trial.  Thus, Violating Petitioner's Sixth and Fourteenth Amendment Rights of the United State's [sic] Constitution."  (Doc. 5, p. 14).

Petitioner last claims that "trial counsel erred when he failed to file a Motion to Dismiss or Motion for Mistrial based on the perjured testimony of Trooper Baker and not being able to confront his accuser at trial."  (Doc. 5, p. 14).  The basis for

---

[6] Even if Florida law allowed petitioner's proposed challenge in a motion for JOA, petitioner fails to establish counsel was ineffective for failing to advance the arguments he proposes, because those arguments had no chance of success for the reasons outlined in respondent's answer, *see* Doc. 15, pp. 38-41.

petitioner's claim is that because ASA Jason Maine prepared the traffic citation for felony fleeing or attempting to elude, Maine "became the material witness and the subsequent prosecution at the very least was an abuse of prosecutorial power and conduct." (*Id*., p. 15). Petitioner asserts that "had defense counsel alerted the court to the fact that the prosecuting attorney had written the Aggravated Fleeing and Eluding citation, then he should have moved for a mistrial and requested a different prosecutor so that the Petitioner would have been able to confront his accuser as prescribed by law." (*Id*.).

The parties agree that petitioner presented this claim to the state courts as Ground Three of his Rule 3.850 motion; that the state circuit court denied relief; and that the First DCA summarily affirmed without explanation. (Doc. 5, pp. 16-17; Doc. 15, pp. 42-43).

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard set forth above.

B.    Section 2254 Review of State Court's Decision

Applying *Wilson*'s "look-through" presumption, the First DCA's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of

*Strickland.*  The state court utilized the *Strickland* standard, (Ex. H, p. 33), and

denied relief as follows:

> Defendant claims that counsel was ineffective for failing to move
> for dismissal based on a confrontation clause claim.  Defendant claims
> that because the State Attorney actually wrote the citation for fleeing or
> eluding that he was denied his right to confront his accuser.  This claim
> is without merit.  Defendant was offered ample opportunity to cross
> examine Trooper Baker who was the witness to the criminal episode.
> *Exh. 2-pp. 40-57.*  This claim is denied.

(*Id.*, p. 35) (italics in original).

This claim can only be characterized as frivolous.  No legal authority, in

Florida Statutes Section 316.650, or anywhere else, supports petitioner's assertion

that the prosecutor's preparation of the traffic citation transformed him into a

material witness to the crime thereby requiring his withdrawal from the case.

Second, and completely obvious, no right to confront ASA Maine was triggered,

because no statement from Maine was introduced at petitioner's trial.  *See Crawford*

*v. Washington*, 541 U.S. 36 (2004) (discussing the scope of the Confrontation

Clause).  Moreover, and equally obvious, the record establishes that defense counsel

had the opportunity to, and did, cross-examine the one witness whose statements

were admitted against petitioner at trial – Trooper Baker.

"[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994). The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Petitioner is not entitled to federal habeas relief on Ground Four.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further.'"
*Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S.
at 327).  "When the district court denies a habeas petition on procedural grounds
without reaching the prisoner's underlying constitutional claim, a COA should issue
when the prisoner shows, at least, that jurists of reason would find it debatable
whether the petition states a valid claim of the denial of a constitutional right *and*
that jurists of reason would find it debatable whether the district court was correct in
its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, (2000) (emphasis added).
The petitioner here cannot make the requisite showing.  Accordingly, the court
should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order,
the court may direct the parties to submit arguments on whether a certificate should
issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to
this recommendation by either party, that party may bring such argument to the
attention of the district judge in the objections permitted to this report and
recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 5), challenging the judgment of conviction and sentence in *State of Florida v. Nicholous Bradwell*, Leon County Circuit Court Case No. 2013-CF-140, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 10th day of May, 2018.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.